AMALIA DÍAZ CARRIÓN ET AL., Plaintiffs and Appellants, *v.* EASTERN SUGAR ASSOCIATES, Defendants and Appellees.

No. 609.　　Decided March 16, 1964.

*Heriberto Torres Vázquez* for appellants. *Sifre & Ruiz Suria* and *Abelardo Ruiz Suria* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

By deed No. 236 executed before Notary Fulgencio Piñero Rodríguez in Juncos on December 5, 1927, Carlos

Díaz Carrión, in his own name and as attorney in fact of his brothers Arturo and José Bibiano, and his sister Amalia Díaz Carrión, constituted a mortgage on two properties which belonged to them in undivided joint ownership, in favor of Casiano Díaz Mediavilla to secure a loan for $4,000. It was provided in the deed that the loan would accrue interest at the rate of 12 percent annually, payable by semesters in advance, and that the term of the loan would be two years to expire on a date certain, December 5, 1929. The mortgage was constituted "to secure the payment of the aforesaid four thousand dollars principal, *its interest*, and an additional credit of five hundred dollars for costs and attorney's fees in case of judicial claim." Díaz Carrión on his behalf and in his capacity as attorney in fact waived the right of homestead over both properties.

Díaz Mediavilla assigned the mortgage credit to the corporation The United Porto Rican Bank on February 1, 1929. In a summary foreclosure proceeding instituted on October 16, 1931 in the former District Court of Humacao, Civil Case No. 16296, the bank foreclosed the mortgage credit. On October 22, 1931 it filed its complaint for $4,000 principal, interest at 12 percent from June 5, 1928 until September 30, 1931, interest to be accrued until full payment plus the foreclosure credit, and recorded its right of foreclosure. In said proceeding and by the deed of judicial sale, on March 23, 1932 the mortgaged properties were adjudicated to the bank in partial payment of its mortgage credit, and it recorded its title on November 28 of said year.[1]

By deed No. 25 of March 26, 1932 before notary Walter N. Newsom, the United Porto Rican Bank sold the properties to United Porto Rican Sugar Co. (of Puerto Rico), which recorded its title on November 28 of that year. These prop-

---

[1] In this inscription of the registry of property the service of process is not copied, nor the order of the sale, nor the public auction certificate. The record before us does not contain record of the foreclosure proceeding.

erties were later consolidated with nine others forming a new property in the registry.

By virtue of a decree issued by the United States District Court for Puerto Rico on December 11, 1933, in an action filed in that court against the United Porto Rican Sugar Co. (of Puerto Rico) and of the sale carried out in compliance with said decree, the defendant herein Eastern Sugar Associates acquired the aforesaid properties on June 29, 1934 and recorded its title.

The proceeding on review is an action for the nullity of the summary foreclosure proceeding, revendication, and collection of fruits which Amalia and José Bibiano Díaz Carrión and the heirs of their other brothers Arturo and Carlos, filed in the Superior Court of Puerto Rico, Caguas Part, against the Eastern Sugar Associates, claiming the return of the aforesaid properties with their fruits.[2] The annulment of the mortgage foreclosure proceeding filed by the United Porto Rican Bank was requested on the ground that it charged all the interest at 12 percent annually and that it could only charge them up to the date of the expiration of the mortgage credit, without any default interest having been stipulated, whereupon the property was foreclosed and excessive interest demanded. They allege that after the expiration only interest at six percent annually could be collected in the foreclosure proceeding. *Cf. Buil* v. *Banco Popular*, 69 P.R.R. 237, 247 (1948); *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957); *Heirs of Ramírez* v. *Sup. Ct.; Del Moral, Int.*, 80 P.R.R. 147 (1957).

In answering the complaint Eastern Sugar Associates set up several affirmative defenses on the basis that it had already acquired the property in a sale decreed by the United States District Court for Puerto Rico and that pursuant to the terms of the decree of sale it acquired the property with

---

[2] The complaint merely expresses the year and has no other date of filing in the office of the clerk. There is a summons issued by the clerk on June 25, 1959 and served by the marshal on the same date.

a free title from all claim or lien, except those liens expressly acknowledged in the aforesaid decree. It also adduced that the plaintiffs Amalia and José Bibiano Díaz Carrión lacked a cause of action to claim now since they had sold their shares in the mortgaged property prior to the judicial sale in which the creditor the United Porto Rican Bank had acquired them. Actually, there are certified copies in the record of deeds Nos. 37 of September 29 and 40 of November 2, 1931 executed before Notary J. C. Rivera Morales, in which plaintiffs Amalia and José Bibiano Díaz Carrión appeared to sell their undivided shares in these properties, subject to the aforesaid mortgage, to third persons who took it upon themselves to pay the mortgage debt and who recorded their title of property in the registry on January 27 and March 9, 1932, after the complaint for foreclosure had already been entered. In connection with these sales and assignments there are in the record certified copies of deeds Nos. 11 and 12 executed both on September 20, 1959 before Notary Heriberto Torres Vázquez, in which said plaintiffs deny that they had alienated by sale or otherwise their shares in said properties.

Defendant Eastern Sugar Associates moved for summary judgment in its favor invoking the decree of sale of the United States District Court for Puerto Rico granting title to it. On September 22, 1961 the trial court rendered summary judgment dismissing the complaint in all its parts on the basis of the interpretation and scope, which as a matter of law, it gave to the court's decree. At this moment we review the summary judgment thus rendered.

■ Aside from the federal decree and its construction of law as a basis for the above judgment, there are in the record a series of important facts in controversy which would have precluded the decision of the case summarily and would have permitted the decision of the case on more solid grounds. *Cf. Roth* v. *Lugo,* 87 P.R.R. 365 (1963) ; *García López* v.

*Méndez García,* 88 P.R.R. 352 (1963) ; *Mercado* v. *Mercado,* 87 P.R.R. 537 (1963), and the previous cases of this Court cited in said decisions.

In the first place there was the controversy, as a question of fact, of the cause of action of plaintiffs Amalia and José Bibiano Díaz Carrión. If it were true that these plaintiffs sold to third persons their shares in the properties foreclosed in this mortgage summary foreclosure proceeding, it is clear that they had no right to claim anything of the present owner of the properties.

In the second place, applicable to all plaintiffs, if the registry did not clearly reveal the vices, defects, or irregularities of the foreclosure proceeding, and if on the other hand the purchaser The United Porto Rican Sugar Co. (of Puerto Rico) did not know of said vices, it would then be a third person in good faith with just title. And if the Porto Rican Sugar Co. (of Puerto Rico) is such a person, so is the receiver who seized its property in the proceeding before the United States Court for Puerto Rico, and finally so would be the present defendant who acquired the property in said proceeding. In the very complaint it is alleged that the defendant and its ancestors were engaged in the exploitation of the property for 27 years. Depending on their good faith and just title, Eastern Sugar Associates could well at present assert its title by virtue of ordinary acquisitive prescription, *cf. Rodríguez* v. *Heirs of Pirazzi,* 89 P.R.R. 494 (1963) (prescription), and cases cited therein, and it would therefore be unnecessary to determine the validity of its title in the light of the legal construction of the federal decree.

There is controversy of fact as to the scope of the interest stipulated, as to what interest was guaranteed by mortgage and as to whether the vices of the proceeding clearly appeared from the registry. From the documents and proof appearing from the record we are not in a position at this moment to determine this aspect of the controversy in one sense or

another. *Cf. Heirs of Ramírez* v. *Superior Court* (reconsideration), 81 P.R.R. 347 (1959).[3] On the other hand, this action does not involve the subsidiary action of § 38 of the Mortgage Law, inasmuch as the property is not in the possession of the foreclosing creditor and furthermore, said personal action would be barred. *Cf. Ríos* v. *Banco Popular*, 81 P.R.R. 368 (1959). The action must be decided solely and exclusively by the question of revendication, which shall in turn depend on the status of third person of the defendant according to the registry. Section 36 of the Mortgage Law. Rescissory and resolutory actions shall not lie against third persons who have recorded the deed of their respective interests except—§ 37—those actions which owe their origin to causes which specifically appear in the Registry. And see § 280 of the Civil Code.

■ We could dispose, without more, of the matter and send the record to the trial court, to substantiate those facts. The determination thereof would perhaps permit the court to decide the question in issue, as a question of law, without considering the federal decree. However, in order to save time in case that the trial court should decide on the facts that defendant did not hold title in 1959 by reason of ordinary acquisitive prescription or that it was not a protected third party, we shall proceed to consider the conclusions of law of the summary judgment dismissing the complaint.

It appears from the record that an action was brought in the United States Court for Puerto Rico by Miller Fertilizer Co. against United Porto Rican Sugar Co. (of Puerto Rico). In decree of December 11, 1933 it was stated that United Porto Rican Sugar Co. had not and could not pay its obli-

---

[3] It appears from the record that in deciding a motion for summary judgment, this time on the part of the plaintiff, the trial court denied the same on the ground that the record showed a genuine controversy as to the facts previously stated.

gations and had no cash to pay them; that the Receiver could not raise funds to continue the transactions and keep the property, and for these reasons it was necessary to sell said property.[4]

It was decreed that the sale of the property would be made free from all preferences, priorities, liens and encumbrances thereon of any nature, except tax liens claimed by the Government of Puerto Rico, mortgages and conditional sale contracts recorded in the respective public registry, and free from all right of redemption and any right of redemption of the defendant (United Porto Rican Sugar Co.), its creditors and stockholders, and of the parties, or of the Receiver and other persons who might claim thereunder would be extinguished except as provided in the decree.

It was provided that upon the sale of the property all preference, priority, lien or encumbrance, except taxes, mortgages and conditional sale contracts, and any claim secured by said preferences, priorities, liens and encumbrances, shall be transferred to the proceeds of sale of such property. That upon confirmation of the sale the Receiver shall deliver possession thereof to the purchaser and the latter shall possess the property free from all claim, right, interest or right of redemption of, in or to the same by or of the defendant United Porto Rican Sugar Co., its successors and assigns.

It was further provided that all creditors of or claimants against United Porto Rican Sugar Co. and the persons claiming by, through or under said United Porto Rican Sugar Co. or its creditors, would be enjoined perpetually from prosecuting against any purchaser or any assignee or against any

---

[4] This was not a bankruptcy action in which the national general public policy prevails. It all shows that it was a personal action against United Porto Rican Sugar Co. probably filed under the diversity of citizenship in which a receivership was provided because undoubtedly there was more than one creditor. The decree itself establishes that by the term *"party"* in that action shall be understood all the *creditors* of Porto Rican Sugar Co. whether or not they had presented their claims.

property sold under this decree, any suit or proceeding *arising out of or based on any obligation or liability of the said United Porto Rican Sugar Co.*, or otherwise impose liability directly or indirectly upon the purchaser, or upon any property sold pursuant to this decree in respect of any claim against United Porto Rican Sugar Co.

It appears from the decree that the court had fixed a limitation of time for the presentation and filing of claims against defendant United Porto Rican Sugar Co. and that the owner of said claim which had not been presented as provided would not be entitled to the benefits of the decree nor entitled to participate in the distribution of the proceeds of the sale decreed.

Construing the decree, the trial court was of the opinion, as question of law, that it enjoined the prosecution of this suit. Construing the decree, we cannot agree with the trial court. Said decree should be taken and construed within the structure and purposes of the proceedings in which it was rendered. It was a personal action filed by a creditor of the United Porto Rican Sugar Co. in which because there were more creditors and, as stated in the decree, it was necessary to provide for a receivership and sell the properties of said corporation to pay its obligations in view of the lack of immediate cash. The decree itself defines the term *"party"* in said personal action as the *creditors* of United Porto Rican Sugar Co. The terms claims, complaints, liabilities and obligations used in the decree within said personal action have a meaning within that situation, that is, complaints, claims, liabilities and obligations arising as a result of the management and of the businesses and operations carried on by said corporation. They cannot refer to a *real* action which does not arise out of the operations properly speaking and liabilities contracted by United Porto Rican Sugar Co., a real action tending to challenge its legal title or lack thereof over its property.

If Porto Rican Sugar Co. had a defective title or had no legal title over the property in controversy herein, although its possession could be adverse, the Receiver could not assert a better or more perfect title. The personal proceedings in which the defendant herein acquired the property in question did not operate to cure or legalize any defect or vice of the title itself over the property. It cannot be concluded from the very decree that it was the intention to make disappear those vices originally in the title, nor to annul or limit any prescriptive period which by the law in force existed or might exist in order to attack the validity of said title.

The summary judgment rendered by the Superior Court, Caguas Part, on review will be set aside and the record remanded to said court to proceed to establish the facts and to decide the question in issue in a manner consistent with the terms of this opinion.